UNITED STATES OF AMERICA
	*Plaintiff,*

	v.						Case No. 3:25-cr-251-TJC-MCR

BRIAN K. CARN, JR.
	*Defendant.*

_____/

## <u>DEFENDANT BRIAN K. CARN JR.'S SENTENCING MEMORANDUM & INCORPORATED MOTION FOR VARIANCE</u>

Defendant, Brian K. Carn, Jr. ("Mr. Carn") by and through counsel, pursuant to 18 U.S.C. § 3553(a), submits this sentencing memorandum and incorporated motion for variance in support for imposition of a reasonable sentence, which is sufficient, but not greater than necessary to achieve the objectives of the United States Sentencing Commission ("USSC").

### <u>OFFENSE HISTORY & CONDUCT</u>

1. Mr. Carn was charged by criminal information with violating 26 U.S.C. § 7212(a), between approximately November of 2016, through November of 2020. [DE1, p. 5].

2. Mr. Carn waived formal indictment and pleaded guilty to the sole count of the criminal information. [DE13].

3. In the Plea Agreement (the "Plea"), the parties stipulated to a loss amount greater than $550,000 but less than $1.5 million dollars, resulting in a base offense level of twenty (20) [DE13 ¶ 7]. The United States of America (the "Government") also agreed to recommend a maximum three (3) level reduction for acceptance of responsibility pursuant to U.S.S.G.

§ 3E1.1(a) and (b). [DE13 ¶ 7]. The Government also stipulated that Mr. Carn is a zero-point offender, entitled to a two-level reduction pursuant to U.S.S.G. § 4C1.1 [DE13 ¶ 7].

4. The Factual Basis (the "Agreed Facts") attached in support of the Plea indicate as follows, as to the substance of the offense:

   a. Mr. Carn operated a ministry (the "Ministry"), which is a nonprofit organization, and is accordingly not required to report income to the internal revenue service ("IRS") [DE13, p. 16].

   b. Nevertheless, Mr. Carn was required to report and pay taxes related to his *income* received from the ministry and from other sources related to his work at the ministry. *Id.*

   c. In 2015, Mr. Carn did not draw a salary from the Ministry, and instead received income through cash withdrawals from the Ministry bank accounts [DE13, p. 17]. In 2016, the internal finance manager provided information related to the income (which exceeded $1 million dollars), to Mr. Carn's accountant; the accountant then prepared a tax return which resulted in $606,722 in taxes due and owing. [DE13, p. 17-18].

   d. In October of 2016, the IRS attempted to collect said taxes, and in November of 2016, Mr. Carn provided fabricated information to a different accountant, in order to file an "amended" tax return for the year, which was the subject of the IRS collection efforts. [DE13, p. 17].

   e. Based on false information provided by Mr. Carn, the accountant prepared and filed tax related forms for 2015, 2017, and 2018. [DE13, p. 18]. Mr. Carn did not file individual tax returns between 2019 and 2024. [DE13, p. 18].

f. In November of 2020, Mr. Carn executed a Form 433-A (the "Form") and submitted the same to the IRS. [DE13, p. 18]. This Form contained various false representations related to (i) transfer of valuable assets; (ii) name and location of bank and investment accounts; (iii) extent of assets; and (iv) income. [DE13, p. 19].

5. To be clear, there is no indication that Mr. Carn committed theft, embezzlement, or otherwise misappropriated Ministry funds. [DE13]. Instead, the offense concerns only Mr. Carn's conduct in relation to his reporting (or failure to report) his income from the Ministry and his efforts to conceal the true extent of his income for tax purposes. *Id.*

6. Mr. Carn's total offense level is twenty (20), and he received a three (3) level reduction under U.S.S.G. § 3E1.1(a) and (b), and a two (2) level reduction under U.S.S.G. § 4C1.1(a), making his total offense level fifteen (15). [PSR ¶¶ 24-32]. Mr. Carn is a category I offender. [PSR ¶ 38].

7. Based on his offender category and total offense level, the recommended, advisory guideline range is 18-24 months in the custody of the Federal Bureau of Prison ("BOP"). [PSR ¶ 48].

<u>MR. CARN'S HISTORY & CHARACTERISTICS</u>

8. Mr. Carn was born in Jacksonville, Florida, and had a positive childhood which was largely influenced by his involvement in the church community.

9. While Mr. Carn's father was addicted to narcotics, Mr. Carn's mother was able to shield Mr. Carn from negative effects associated with that addiction, and Mr. Carn was largely unaware of his father's history of addiction during his formative years.

10. Mr. Carn was raised primarily by his mother, without the presence of his father after his mother and father divorced. This divorce occurred when Mr. Carn was just five (5) years old.[1]

11. Mr. Carn has a sister, who is nine (9) years older, who was raised by Mr. Carn's maternal grandmother. Although Mr. Carn was not reared with his sister in the same household, he has a close relationship with her even now.

12. Mr. Carn lived in Jacksonville until 2016 when he relocated to Charlotte, North Carolina. Mr. Carn currently resides in Charlotte, and intends to continue his residence there, upon resolution of this offense.

13. Mr. Carn graduated from high school in 2006 and did not attend college. However, he has been preaching since he was twelve (12) years old.

14. Mr. Carn was an independent evangelist between 2006, upon his graduation from high school, and 2015, when he opened his own ministry. In large part, Mr. Carn's life has been dedicated to the church community and service to that community.

15. Mr. Carn's history of dedicated service, and of being an upstanding member of the community is crystallized by the numerous letters of support, which have been offered to this Court for consideration of a reasonable sentence. These letters are attached as composite "Exhibit A" to this memorandum.

16. Andrea Carn ("Mom" or "Andrea") indicates that Mr. Carn is a loving son and brother; a good pastor and a "great leader". [Exhibit A, p. 3]. Mom emphasizes that Mr. Carn has accepted responsibility for his conduct and is "not one to throw blame or try to throw others

---

[1] While Mr. Carn was not subjected to any mistreatment during his formative years, it appears that his mother was the victim of domestic battery and obtained an injunction against Mr. Carn's father when Mr. Carn was two (2) years old.

under the bus". *Id.* Instead, he has expressed deep regret for his conduct and its impact on others. *Id.*

17. Mom also notes that Mr. Carn's has selflessly utilized his funds to buy people cars, pay bills for community members who cannot keep the power or water running, and paid off mortgages for those in need. [Exhibit A, p. 3].

18. Mr. Carn's sister KeAundra Boyd ("Sister") indicates in her letter that Mr. Carn is a "loving, supportive, and caring individual" always available to offer guidance, support, or presence. [Exhibit A, p. 5]. Like Mom, Mr. Carn's sister emphasizes that he has "reflect[ed] deeply on his situation and he has expressed sincere remorse for his actions." *Id.*

19. Mr. Carn's niece, Chloe Cephas ("Chloe"), just twenty-two (22) years old describes her uncle as a "kind, loving, and generous" person who would "give you the clothes off his back or his last dollar without hesitation." [Exhibit A, p. 7]. Chloe also recounts Mr. Carn's acts of kindness and support for his church community: "buying cars, paying rent, covering funeral expenses, assisting with surgeries, sending people to college, or helping those who have no family". *Id.*

20. A lifelong friend, Frank Ray III ("Frank") describes Mr. Carn as someone who "always show[s] up for the people in his life". [Exhibit A, p. 8]. Importantly, Frank recognizes the seriousness of Mr. Carn's conduct but emphasizes that Mr. Carn is "willing [] to grow" after great reflection on his conduct. *Id.*

21. Mr. Carn's executive assistant, who has known Mr. Carn for ten (10) years, Joy Miller ("Joy") indicates in her support letter that Mr. Carn's "life's work has been one of pouring onto others and building people up." [Exhibit A, p. 11]. Joy indicates that Mr. Carn has

been forthcoming with the church about the charges against him and has been "sincerely" and "visibly" remorseful. [Exhibit A, p. 10].

22. The co-founder of Mr. Carn's ministry, Syetta Chapman ("Syetta") describes Mr. Carn as a talented and passionate pastor, stating that his teachings have "transformed [her] heart, mind, and soul in ways [she] had never experienced before." [Exhibit A, p. 12]. During the eleven (11) years she has known him, Syetta has "witnessed his unwavering love for God's people, his humility, kindness, forgiveness, and deep compassion." *Id.* Syetta, like Mom, and Chloe recount Mr. Carn's good acts of support for his church community in paying mortgages, rents, car payments, hotel accommodation, transportation, and other necessities. [Exhibit A, p. 13]. Syetta also noted Mr. Carn's support, mentorship, and community support unrelated to any financial aspects of his generosity. *Id.*

23. Saqweta Barrino ("Saqweta") is a member of Mr. Carn's ministry and has been acquainted with him for six years. [Exhibit A, p. 15]. In her view, Mr. Carn has "demonstrated a life of selflessness, humility, compassion, and integrity." *Id.* He is "selfless" and dedicates "many hours each day" to studying scripture and serving his church community. Saqweta recounts how Mr. Carn's understanding, teachings, counsel, and acceptance helped her turn from a life of self-medicating with drugs and alcohol to a life of love and acceptance. *Id.* Finally, Saqweta emphasizes that Mr. Carn is remorseful for his conduct, and is "working" to learn and correct, to ensure that "this never happens again." [Exhibit A, p. 16].

24. Another member of Mr. Carn's ministry, Irve Edmond ("Irve") paints a similar picture. [Exhibit A, p. 17]. Irve too was struggling with addiction, alcoholism, and an unhealthy lifestyle without "direction" or "discipline" but Mr. Carn consistently, and intentionally,

provided counsel to Irve and helped him make "real changes" which became "lasting transformation." [Exhibit A, p. 17].

25. A notable point to Irve's letter is the fact that Mr. Carn is not merely a "figurehead" to a large church organization; instead, Mr. Carn has "continually [made] himself available to people, both publicly and privately" and served as a "mentor" even outside of merely preaching on the sabbath. [Exhibit A, p. 18]. This point is particularly worth emphasis in a case where Mr. Carn's income was derived from the Ministry accounts.

26. Stated differently: Irve and Saqweta make abundantly clear that Mr. Carn did not merely establish his Ministry as a method of enriching himself, or with a purpose of establishing a nonprofit "tax" haven. Mr. Carn is a true believer, a true preacher, called to God from a very young age, and has devoted essentially his entire life to this calling.

27. Ultimately, Mr. Carn's actions stem from his lack of sophisticated knowledge of the federal tax code, and a decision in 2016 which essentially spiraled out of control. Mr. Carn found himself in a situation in November of 2016, in which he had *spent* the funds received from the Ministry, and was suddenly faced with the realization that he would be required to pay a *huge* sum (more than $600,000.00) related thereto. Mr. Carn panicked. He made an exceedingly poor decision to cover up the income, rather than attempt to repay it over time. Once this decision was made, Mr. Carn was essentially caught in a spiral, and "doubled down" so to speak. He regrets, woefully, that decision. Furthermore, he is committed to making right, his wrongs, and has accepted prompt, and full responsibility for his conduct with an understanding of the harm that it has caused.

28. Mr. Carn, as recounted by the many character letters submitted in his support, is also remorseful and feels a great degree of shame in having engaged in the course of conduct which led to this sentencing.

29. Under the circumstances, Mr. Carn respectfully requests that this Court view the actions underlying his offense as clear, and vast lapses in judgment, and a stain on an otherwise long history of law-abiding conduct, ministry, and support of others, which has almost exclusively been directed toward uplifting his community.

<u>MEMORANDUM OF LAW</u>

It is well-settled that the sentencing guidelines are an advisory regime, and the "court is not bound to apply the sentence indicated by the Guidelines." *See United States v. Gibson*, 442 F. Supp. 2d 1279 (S.D. Fla. 2006). Instead, the "district court must calculate the advisory sentencing range correctly and must consider it when determining [the] defendant's sentence." *See United States v. Alvarado-Mojica*, 313 Fed. Appx. 180 (11th Cir. 2008). Stated differently, the guidelines are only the "initial benchmark" and "starting point" of the court's sentencing analysis. *See United States v. Burton*, 757 Fed. Appx. 883 (11th Cir. 2018).

As such, the guidelines are not entitled to, and should not be given, a presumption of correctness. *See e.g., United States v. Atias*, 518 Fed. Appx. 843 (11th Cir. 2013) ("A sentencing court may not automatically presume that the applicable guidelines range is reasonable. If a district court applies the Guidelines as though they were mandatory or treats the range as presumptively reasonable, that is procedural error."); *United States v. Grider*, 337 Fed. Appx. 820 (11th Cir. 2009) ("district courts may not presume that a sentence within the Guidelines range is reasonable.").

With the guidelines as the "starting point" the court must consider the factors set forth in § 3553(a) to arrive at a reasonable sentence which is "sufficient, but not greater than necessary" to

comply with the purposes set forth by the Sentencing Commission. *See* 18 U.S.C. § 3553(a). These purposes include the need for the sentence "to reflect the seriousness of the offense, [] promote respect for the law, and [] provide just punishment for the offense"; and "afford adequate deterrence to criminal conduct"; and "protect the public"; and "provide the defendant with needed educational, or vocational training, medical care, or other correctional treatment." *Id.* at (a)(2)(A)-(D). In conducting its sentencing analysis, the District Court is required to consider any nonfrivolous argument made by the defendant in support of a downward variance. *See United States v. Tucker*, 838 Fed. Appx. 453 (11th Cir. 2020) ("It is true that the case law does clearly establish that a sentencing judge must consider a defendant's non-frivolous arguments for a lower sentence.").

What is more, the District Court is vested with vast discretion to determine the proper weight to be accorded to any of the 3553(a) factors. *See e.g., United States v. Warren*, 511 Fed. Appx. 938 (11th Cir. 2013) ("The weight to be given to a particular factor under § 3553(a) is left to the sound discretion of the district court."); *United States v. Henry*, 2024 U.S. App. LEXIS 27673 (11th Cir. Oct 31, 2024) ("While all applicable § 3553(a) factors must be considered, the weight given to each § 3553(a) factor is committed to the sound discretion of the district court and a district court may attach great weight to one § 3553(a) factor over others."). Likewise, this Court has a high degree of flexibility in assessing each case individually and crafting a sentence that fits the offender. *See e.g., United States v. Rosales-Bruno*, 789 F. 3d 1249 (11th Cir. 2015) ("In assigning weight to the 18 U.S.C. § 3553(a) factors as part of the weighing process, a court may (and should) consider individualized, particularized, specific facts and not merely the guidelines label that can be put on the facts.").

Ultimately, the Court's sentencing analysis must be "individualized" in order to comply with the "uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and punishment to ensue." *See United States v. Irey*, 612 F. 3d 1160 (11th Cir. 2010). The Eleventh Circuit repeatedly emphasizes that sentencing is a critical role of the District Court, who is in the "best position" to "conduct this unique study" and engage in the "open-ended and fact-heavy § 3553(a) inquiry" and has exceedingly broad discretion to do so. As applied here, the § 3553(a) factors undoubtedly weigh in favor of a downward variance, and the most relevant § 3553(a) factors are addressed below.

I.        <u>OFFENDER & OFFENSE CHARACTERISTICS [§ 3553(a)(1)]</u>

First and foremost, Mr. Carn submits that the sentencing factor under § 3553(a)(1) weighs heavily in favor of a downward variance in this case. Under § 3553(a)(1) the District Court is directed to consider the "nature and circumstances of the offense" as well as the "characteristics of the offender." *See* 18 U.S.C. § 3553(a)(1). While this factor should not be the "single-minded focus" of sentencing, the Eleventh Circuit has emphasized that it is "an important factor in sentencing." *See United States v. Howard*, 28 F. 4th 180 (11th Cir. 2022). In evaluating the "characteristics" of the offender, the Court can consider a vast range of information bearing on the defendant's "background, character, and conduct." *See United States v. Bernal*, 518 Fed. Appx. 800 (11th Cir. 2013).

Additionally, this sentencing factor requires that the District Court consider the way in which an offender committed an offense, not just its bare elements. *See generally United States v. Fields*, 608 Fed. Appx. 806 (11th Cir. 2015) (finding that the above provision "provides the judge shall consider the nature and circumstances of the offense."); *United States v. Mendoza-Perez*, 2025

10

U.S. Dist. LEXIS 122154 (M.D. Fla. Jun. 27, 2025) ("18 U.S.C. § 3553(a)(1) requires the sentence to reflect the nature and circumstances of the offense.").

Consideration of the methods used by a defendant necessarily encompasses a consideration of the defendant's *motive* in committing the offense. *See United States v. Oudomsine*, 57 F. 4th 1262, 1268 (11th Cir. 2023). *See also Wisconsin v. Mitchell*, 508 U.S. 476 (1993) ("The defendant's motive for committing [an] offense is one important factor [in determining a sentence]."); *Tison v. Arizona*, 481 U.S. 137 (1987) ("Deeply ingrained in our legal tradition is the idea that the more purposeful is the criminal conduct, the more serious is the offense, and therefore, the most severely it ought to be punished.").

As indicated in the preceding paragraphs of this memorandum, Mr. Carn is a preacher who has dedicated his life, even from a young age to the church and the community. Mr. Carn has changed countless lives through his devoted service, counsel, guidance, and support. Mr. Carn made a monumental mistake, when faced with the prospect of paying a tax bill exceeding $600,000 in relation to his 2015 tax return. Instead of facing this reality, Mr. Carn tried to run away from it, which led to a series of additional poor choices. However, Mr. Carn must emphasize that his motive was not greed.

Mr. Carn opened his ministry with the purpose of preaching to his community and helping others find and form a positive relationship with God. His Ministry has grown, in large part due to his talents in preaching, and his commitment to his parishioners, some of whom have submitted letters attesting to the positive impact Mr. Carn has had on their lives. At no point has Mr. Carn strayed from his original purpose in opening his Ministry. Mr. Carn has consistently given physical support and guidance to his community and has been exceedingly generous to those who are in need, paying for vehicles, homes, power and water, other necessities, or even college tuition.

As stated above, Mr. Carn is a caring man, devoted to God and his church community. He has not abused his office and had no ill-intentions in opening his ministry in 2015. He is extremely remorseful for his conduct and has been transparent about the circumstances surrounding his arrest with his ministry community. Mr. Carn is dedicated to making right his wrong and taking proactive measures to ensure that nothing like this occurs in the future. He respectfully requests this Court consider (1) his history of good works, guidance, and spiritual counsel to his ministry; (2) the good he can continue to do in the community; (3) the grave loss that will be caused by his absence from the community during any period of incarceration; and (4) the complete lack of ill-motive or intent vis-à-vis his formation of the Ministry, or the use of Ministry funds - in reaching a reasonable sentence in this case.

II.     RECIDIVISM & DETERRENCE [§ 3553(a)(2)(B), (C)]

Next, Mr. Carn respectfully requests this Court to consider and weigh the exceedingly low risk of recidivism presented by Mr. Carn in reaching a reasonable sentence. "Section 3553(a)(2)(B) provides that the district court is required to consider the need for a defendant's sentence to afford adequate deterrence to criminal conduct." *See United States v. Hooper*, 566 Fed. Appx. 771 (11th Cir. 2014) (citing 18 U.S.C. § 3553(a)(2)(B)). "Promoting deterrence is distinct from the goal of preventing recidivism which is referenced in § 3553(a)(2)(C)." *Id.* The recidivism factor can support a variance where the offender presents evidence that his conviction "presents a greater or lesser likelihood of recidivism." *See United States v. Roman*, 989 F. 2d 1117 (11th Cir. 1993). Similarly, the court's determination that the offender has been "effectively deterred" from further criminal activity, is a proper ground for variance, if coupled with considerations of effective general deterrence. *Hooper*, 566 Fed. Appx. at 772 (citing *United States v. Martin*, 455 f. 3d 1227, 1240 (11th Cir. 2006)).

As to recidivism, it is frequently recognized that first-time offenders are statistically less likely to reoffend, and Mr. Carn is a first-time offender. In that regard, the USSC study on recidivism and first-time offenders shows that zero-point offenders, specifically, are *incredibly* less likely to reoffend than even one-point offenders. *See* U.S. Sent'g Comm'n, RECIDIVISM AND THE "FIRST OFFENDER" https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2004/200405_Recidivism_First_Offender.pdf (last visited Apr. 13, 2026). Such offenders had only an 11.7 percent recidivism rate. *Id.* at p. 13. Offenders with one criminal history point had recidivism rates at 22.6 percent, and offenders with two or more points had a recidivism rate of 36.5 percent. *Id.* at 13-14.

With respect to deterrence, this concept has two components: general and specific. Specific deterrence is concerned primarily with "deterring the criminal who is sentenced from committing more offenses in the future." *See Ford v. Schofield*, 488 F. Supp. 2d 1258 (N.D. Ga. 2007). General deterrence, on the other hand, is concerned with the "effect of a sentence in one case on others who might otherwise commit the crime." *Id.* As to specific deterrence, Mr. Carn has already experienced a high degree of deterrence based on the shame he has felt, his sincere remorse, and the effect that his arrest has had on his ministry community.

Although his community has remained largely supportive and Mr. Carn has been given the grace of a vast amount of forgiveness, the effect on him personally from letting down his parishioners cannot be overstated. Furthermore, because Mr. Carn's offense *originated* largely from the fact of his unfamiliarity with business administration, the tax system, and his inability to foresee the tax implications arising from his draws from Ministry funds, a harsh prison sentence will not serve the purposes of general deterrence.

Mr. Carn in no way argues that he was unaware of his wrong conduct, or that he did not intentionally conceal assets, or cover up his income. Instead, Mr. Carn faces these facts and is prepared to face the consequences of his actions. However, it should still be considered that the very inception of his criminal course of conduct – in forming his Ministry, and drawing income therefrom, was not motivated by greed or ill will. It was formed from a genuine desire to preach, spread the word of God, and provide support and spiritual guidance to his community. Under the circumstances, principles of both deterrence and recidivism support a variance from the recommended advisory guideline range.

CONCLUSION

**WHEREFORE**, Mr. Carn respectfully requests this Court (1) <u>consider</u> this sentencing memorandum; and (2) <u>sentence</u> Mr. Carn to a reasonable sentence, which is not greater than necessary to achieve the objectives of the USSC, and which varies downward from the recommended, advisory guideline range; and (3) consider the variance to include a house arrest sentence where Mr. Carn can continue to work to pay restitution instead of becoming an unnecessary financial burden to the Government; and (4) <u>award</u> all other relief deemed just and necessary under the circumstances.

[*Left Blank Intentionally*]

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been electronically filed with the Clerk via CM/ECF and served on all counsel of record and on this 15th day of April 2026.

Respectfully submitted,

By: */s/ Walter Reynoso*
Walter Reynoso, Esquire
(Fla. Bar No. 525693)

**LAW OFFICES OF WALTER REYNOSO**
2030 Douglas Road, Suite 214
Coral Gables, FL 33134
Telephone:(305) 441-8881
Facsimile: (305) 441-8745
E-Mail: walter@lawreynoso.com

# EXHIBIT A

Andrea Carn
133 Giant Oak Lake
Stateville, NC 28677

March 20, 2026

To:
The Honorable Judge
Timothy J. Corrigan

Your Honor:

My name is Andrea Carn and I am writing a character reference for my son, Brian Carn Jr., who is pleading guilty to the charges of "Wire Fraud and Tax Evasion".

I love my son very much. He is my son and also my pastor. I have known him all of his life. I birthed him on September 11th. I have had a good relationship with my son throughout this life.

As a son, he loves me as his mother. He is such a loving son. He is a loving brother to his sister. He is a good pastor. He is a great leader. He is always looking to be a blessing to people. Even as a child, he was always looking to see who he could help or make better. He has always had a positive outlook on life. He never smoked, never drank, and never did drugs. He stayed away from those things which he could have done but he loved God. He was called into ministry at an early age. That is what his whole life has been about, loving God.

I believe he pled guilty because he takes responsibility because he is not one to throw blame or to try to throw others under the bus. He has expressed deep regret for how this has impacted others. He apologized to those that are in his life and to those who follow him because he doesn't want them to think that he is one who tries to get out of things that he has done or things that may have happened. I think that says a lot about him and his character and integrity. He took ownership of what has happened.

There are so many good things that I can name that my son has done. I know that he has bought people cars that had no transportation. He's paid people's bills that did not have lights or did not have water. He has paid people's house notes. He has taken people into his own home. At times, he has had eight or nine people living with him because in a sense, they didn't have anywhere to go. He had the space, so he made it happen. He has such a big heart. He has a church that he provides for the homeless and provides for the elderly. He takes care of those that may be sick. He has a good heart and I believe he looks to do better for people so they don't feel that they don't matter. I know he is always looking to see what he can do to better the community, to better others. He takes care of his dad and has taken care of me. He helps

everybody.  He doesn't judge.  He believes if God send them to him, that he can take care of them.  That is what I have seen for myself, not what someone else has told me.

I am a proud mother.  I am happy to know my own son.  I love him and am so proud of the many great things he has done.

Sincerely,

Andrea Carn

The Honorable Judge Timothy J. Corrigan
United States District Court
Middke District of Florida
Jacksonville Division


Dear Judge Corrigan,

I am writing this letter in support of my brother, Brian Carn. I have known him his entire life, and as his sibling, I have had the privilege of witnessing the kind of person he truly is at heart.

My brother has always been someone I look up to. Even though he is my little brother, he has always been a true example of the person I desire to be. I am deeply inspired by him. Watching him change so many lives over the years has influenced me to become a better wife, mother, daughter, friend, and servant of the Lord. I truly believe God blessed me when He gave me my "little big brother."

My life has not been perfect, but through every season, my brother has loved me unconditionally. That kind of love is rare. It is even rarer to find someone who gives people chances that come with a true fresh start—but that is exactly who he is. I have personally seen him forgive others for anything they have done, offering grace, compassion, and a genuine opportunity to begin again. That is something incredibly commendable, especially in today's world.

He is a loving, supportive, and caring individual who deeply values his family and his church. No matter the circumstances, he consistently shows up for those he loves— whether that means offering guidance, providing support, or simply being present. He is hardworking and determined, always striving to do better for himself and those around him.

Over time, I have seen him reflect deeply on his situation, and he has expressed sincere remorse for his actions. In our conversations, I have seen genuine regret and a desire to make better choices moving forward. This experience has had a profound impact on him, and I truly believe he is committed to growth and change.

I respectfully ask the Court to consider my brother not only for this moment, but for the person he is and the countless lives he has touched. I believe in him, and I know he is capable of continuing to grow and be a positive influence in the lives of others.

Thank you for your time and consideration.

More Grace,

KeAundra Boyd
9120 Ribault Ave
Jacksonviile, FL 32208
404.955.4290

28 March 2026

To:

The Honorable Judge Timothy J. Corrigan of The United States District Court Middle District Court

Your Honor,

My name is Chloe Cephas, and I am writing in support of my uncle, Brian Carn Jr. I am his oldest niece, and I have known him for 22 years—my entire life. I am currently a Political Science major at North Carolina A&T, and I feel privileged to speak to his character.

My uncle is truly the apple of my eye. In all the years I have known him, I have never seen him act meanly or disrespectfully. He is always kind, loving, and generous—someone who would give you the clothes off his back or his last dollar without hesitation.

One example that shows the kind of person he is happened at our church. There is a woman who relied on walking or catching rides to get around, and my uncle gifted her a very nice car without her paying a single dime. This act is just one of countless times he has gone above and beyond to help others, whether it's buying cars, paying rent, covering funeral expenses, assisting with surgeries, sending people to college, or helping those who have no family. He gives love and support even to those who may not have shown the same to him.

My uncle is also a man of strong character. He is loyal, honest, and selfless. He consistently puts others before himself and acts out of compassion rather than expectation. These qualities are not occasional—they are the essence of who he is.

I understand the seriousness of the matter before the Court, but I respectfully ask that you consider the full character of Brian Carn Jr. He has positively impacted countless lives, including my own, and I am confident in his ability to continue being a source of love, generosity, and guidance for others.

Thank you for your time and consideration.

Sincerely,
Chloe Cephas

823 Chicopit lane
Jacksonville, Fl 32225
904-710-6379

Frank Ray III

8200 Mall Parkway A120 #164

Lithonia, GA 30038

3/27/26


To:

The Honorable Judge Timothy J. Corrigan


Your Honor:


My name is Frank Ray III, and I am writing this letter in support of my friend and brother, Brian Carn. I have known Brian for over 18 years, which has given me a long and consistent view of his character, his growth, and the way he lives his life over time.


I want to be clear that I understand the seriousness of the matter before the court. My intent is not to excuse or overlook any wrongdoing, but to offer a fuller picture of who Brian is beyond this moment.


Brian is someone who has always shown up for the people in his life. He is dependable, thoughtful, and carries a genuine sense of responsibility. Over the years, I have seen him support others, make difficult decisions, and navigate life with a level of consistency that speaks to his character. He is not someone who avoids accountability, he faces it.


What stands out most about Brian is his willingness to grow. He reflects, he learns, and he makes adjustments. In a world where many resist correction, Brian leans into it. That posture alone tells you a great deal about the kind of man he is.

In my experience, Brian is not defined by a single season. He is defined by his pattern, his effort to do right, his care for others, and his commitment to becoming better. I believe he will carry the weight of this situation seriously and use it as a turning point for continued growth and responsibility.

Your Honor, I respectfully ask that you consider not only the circumstances of this case, but also the character and potential of the individual before you. Brian is someone who has the capacity to continue contributing positively to his community and to the lives of those around him.

I believe accountability and opportunity can exist together. Brian is prepared to accept responsibility, and he is also deserving of the opportunity to continue building a life that reflects the lessons he is learning now.

Thank you for your time and consideration.

Sincerely,

Frank Ray III

March 25, 2026

The Honorable Judge Timothy J. Corrigan
United States District Court
Middle District of Florida (Jacksonville)

Your Honor:

I am writing this letter in support of Pastor Brian Carn, whom I have had the honor of knowing for approximately 10 years as both his Executive Assistant and a devoted member of his church and ministry.

Over the past decade, I have worked closely alongside Pastor Carn in both ministry and administrative capacities. This has afforded me a rare and consistent view of his life, not just from a distance, but up close in the day-to-day responsibilities, pressures, and decisions that come with leadership. In all of these settings, I have known him to be a man who gives of himself freely—his time, his resources, and his wisdom—often prioritizing the needs of others above his own! He leads with integrity, strength, discernment, and a genuine love for God and people that is not performative, but lived out daily.

On a personal level, Pastor Carn has had a profound impact on my life. As his employee, he has challenged me to grow in excellence, integrity, and creativity, consistently pushing me beyond what I believed I was capable of. He has taught me how to think with wisdom, to carry responsibility with maturity, and to live a life that reflects strong moral and spiritual values both in private and in public. Because of his leadership, I am not only better professionally, but I am a stronger and more grounded individual.

When Pastor Carn became aware of the charges against him, he addressed them with me and other leaders within our ministry with sincerity and visible remorse. What stood out to me most was not only his acknowledgment of the situation, but his deep concern for how it has affected those connected to him personally, as well as the broader church community. His posture was not dismissive or indifferent, but reflective, regretful, and aware of the weight of it all.

I have also witnessed firsthand his consistent commitment to serving others in tangible and impactful ways. Through initiatives such as "Gas on God," he has provided fuel for thousands of individuals during times of financial hardship, including throughout the pandemic and during periods of rising gas prices. He has personally invested in the futures of young people by assisting with their educational expenses, and he has helped members of our church who were in need of transportation by giving of his own vehicles or purchasing vehicles for them. I have seen him provide food for families, support individuals in crisis, and extend help without seeking recognition.

Even now, he continues to prioritize outreach efforts, including initiatives aimed at serving the homeless community through resources such as mobile shower services. His desire has always been to meet people where they are and to uplift them spiritually, emotionally, and practically.

Pastor Carn is someone who has dedicated his life to helping others become better, stronger, and more hopeful. I have seen the lives he has helped restore, the opportunities he has created, and the genuine care he has extended to countless individuals, including myself.

Your Honor, I respectfully ask that you consider not only the circumstances before you, but also the consistent character, contributions, and impact of Pastor Brian Carn over the years.

I am a direct product of his leadership, and I can confidently say that his life's work has been one of pouring into others and building people up. Something that continues to echo far beyond himself.

Your Honor, I thank you for mercy on his behalf.

**Sincerely,**

Joy L. Miller
14112 Loyola Ridge Drive, Charlotte, NC 28277
757-812-3781

**Syetta T. Chapman**
6225 Phyliss Lane
Mint Hill, NC 28227
203-565-3495

March 20, 2026

**The Honorable Timothy J. Corrigan**
United States District Court
Middle District of Florida
Jacksonville, FL

My name is Syetta T. Chapman, and I am a founding member of Kingdom City Church as well as the spiritual daughter of Brian Keith Carn Jr. I first met him in December 2015 at a conference in Long Island, New York. From that very first encounter, I recognized that he was unlike anyone I had ever met in ministry. His words reached the deepest part of my heart, and I immediately felt a connection that I knew would change my life forever. Through his guidance, I began to experience profound spiritual growth, a deeper understanding of God's love, and insight into the supernatural. His teachings transformed my heart, mind, and soul in ways I had never experienced before. The changes in my life were so remarkable that those around me noticed and asked about his ministry, witnessing firsthand the transformation taking place. His voice has become a guiding light, helping me navigate both ordinary and extraordinarily difficult decisions with clarity, faith, and courage. In moments of despair and grief, his prayers, counsel, and encouragement have been my lifeline, offering comfort, hope, and a reminder of God's unwavering love. Without him, I would be lost, and I cannot overstate how much his guidance has shaped every aspect of my life.

I have known Mr. Carn for over 11 years, from 2015 to 2026. During this time, I have witnessed his unwavering love for God's people, his humility, kindness, forgiveness, and deep compassion. He invests wholeheartedly into the lives of those called to his guidance, spiritually, emotionally, and practically, always seeking to uplift, inspire, and nurture growth. Like natural food, his voice became my spiritual nourishment. I can confidently say that his presence has been a cornerstone in my life, and I am a better person because of him. To call Mr. Carn devoted is an understatement. In the years I have been a member of Kingdom City Church, he has never missed a service. He is compassionate, nurturing, patient, and selfless, consistently demonstrating generosity and unwavering dedication to the well-being of others. His guidance has not only shaped my spiritual journey but has inspired countless individuals to live with purpose, integrity, and faith. He leads by example, modeling love, service, and accountability in every aspect of life. He is the kind of man whose integrity and heart naturally draw people to God and which in turn helps them to become the best version of themselves. While I cannot speak to the charges before the Court, I can testify to Mr. Carn's extraordinary character, lifelong dedication to serving others, and the profound positive impact he has had on countless lives. I know him to be a man who reflects deeply on his actions and continually strives to live responsibly and ethically. I have observed Mr. Carn consistently demonstrate sincere care and

accountability for those he serves. He has expressed concern for the harm caused and has taken proactive steps to educate and support those in his ministry, including providing access to financial advisors and credit repair professionals to promote responsibility and stewardship. His commitment to ethics, accountability, and the well-being of others is unwavering, and he models responsibility in every action he takes. I have personally witnessed Mr. Carn's generosity and compassion, including:

- Paying mortgages, rents, and car payments for individuals in need, and giving away 3 or 4 cars.
- Providing food, hotel accommodations, and transportation for those requiring support.
- Opening his home to men in ministry who needed shelter and purchasing a home for homeless women.
- Donating clothing, furniture, and other essentials to those in need.
- Caring for widowed and elderly individuals, both financially and through companionship, visiting them in their homes and hospitals.
- Offering spiritual guidance that helped me navigate unimaginable grief after losing my 21-year-old daughter; his prayers and counsel became my lifeline.
- Witnessing countless instances of physical and emotional healing, including from serious illnesses such as AIDS, cancer, heart and kidney diseases, and more, often beyond what doctors could explain.
- Supporting individuals struggling with addiction, helping them achieve sobriety through prayer and mentorship.
- Mentoring countless individuals, inspiring them to live with purpose, faith, and integrity.
- Organizing community events such as free gas giveaways and distributing Thanksgiving baskets and gift cards to families in need.
- Giving tirelessly of himself, often counseling people late into the night after preaching services.

Every act of generosity is rooted in genuine love, and I have personally seen how his selflessness transforms lives. His deeds are not just moments of kindness—they are lifelines for those in desperate need. I have traveled long distances, driving 11½ hours from Connecticut to North Carolina on numerous occasions, just to attend his church services. I did whatever it took to be in his presence because his ministry has been that impactful. His call is life-changing, destiny-awakening, and God-breathed. He has guided me through grief, spiritual growth, and life's most challenging decisions, always leading with love, faith, and moral integrity. His counsel has pulled me out of despair, helped me make right choices, and provided comfort in my darkest hours. I love him deeply, not only as my spiritual father but also as a guide, mentor, and shining example of a life lived with purpose, service, and unwavering faith in God. Truly, without his guidance and presence in my life, I would be lost. He has instilled in me a hunger to know God and love His people, and his influence continues to shape every part of who I am.

Your Honor, I appeal to your mercy, and I am at the mercy of the Court. I respectfully ask that you consider Brian Keith Carn Jr.'s extraordinary character, profound remorse, and lifelong dedication to helping others when making your decision. I have witnessed firsthand the transformative impact he has had on countless lives, including my own, and I am confident that, given the opportunity, he will continue to contribute meaningfully to society and inspire others to

live with faith, purpose, and integrity. I can say without hesitation that my life and the lives of so many others would not be the same without him. He does not simply preach love and service; he lives it every day. His presence brings hope where there is despair, healing where there is brokenness, and light where there is darkness. To know him is to witness a life dedicated to God and to the upliftment of humanity.

Respectfully,

**Syetta T. Chapman**

Saqweta Barrino
1017 Tyvola Rd
Apt 1403
Charlotte, NC 28217
(704) 242-1514

March 20, 2026

To:
**The Honorable Judge**
*Timothy J. Corrigan of the United States District Court Middle District of Florida (Jacksonville)*

Your Honor:

My name is Saqweta Barrino and I am writing a sincere character letter for my pastor, Brian K Carn, Jr. I have known him for 6 years and 3 months serving as a congregant. I have been made aware of the legal situation in which he currently faces and wish to shed light on who he is as an individual.

In my experience, Pastor Brian K Carn Jr has always demonstrated a life of selflessness, humility, compassion and integrity. For instance, he has selflessly dedicated many hours each day to the study of scripture to help counsel, guide and change my life for the better. Before I met him, I was a hardened woman who possessed some masculine qualities to appear to be a person of strength that people would fear. I was a heavy marijuana user and drinker attempting to run away from the pain, hurt and rejection of those who I thought loved and cared for me. I lived a promiscuous life because I did not understand nor know my value. For many years I used these vices to disappear into a safe space I had built within myself. Then, I met Pastor Brian K Carn Jr. and the hardness that life brought began to dissolve. He met me with compassion. He helped to shed light in the dark room I felt safe in. He did not lecture me, judge me nor beat me down, but he brought clarity to my life. He is the perfect display of true acceptance and unconditional love. He saw the person I was before the vices took over. It is his counsel that has and continues to help me be the woman I am today. With his guidance and the Godly life he has lived before me, I no longer reach for a bottle nor blunt. Instead, I walk in peace with the person I was meant to be, I walk in forgiveness and I walk in love. Because of him, I am confident in who I am, I've let go of the habits that were killing me and I embrace my feminine grace. I've received so many compliments on the transformation of my life, and I owe that to him. He consistently puts others before himself and for that I am very grateful.

Another example that exemplifies who he is was during marriage counseling. He has consistently maintained honesty and confidentiality. He managed his own biases, always set clear professional boundaries, provided a safe environment and was transparent about the process which fostered trust. He is a true pillar. The work he has done and continues to

Classified as Internal

do to assist families within our church and community has had a lasting impact on hundreds by preaching God's word, helping with transportation, food, living expenses, mentoring and counseling. He has provided stability and hope for those in need.

I have seen and heard Pastor Brian K Carn, Jr express remorse concerning the current situation. He continues to walk in humility while working to correct any mistakes, learn from those made and take steps toward self-improvement to ensure this never happens again.

Thank you for your time and consideration of the information provided as you determine the appropriate path forward.

Sincerely,

Saqweta Barrino

The Honorable Judge Timothy J. Corrigan
United States District Court
Middle District of Florida (Jacksonville)


Your Honor,


My name is Irve Edmond, and I have been a member of Kingdom City Church for more than six years under the leadership of Prophet Brian Carn Jr. During that time, I have had the privilege of serving closely alongside him in a capacity that allowed frequent personal interaction and firsthand observation of how he carries himself both publicly and privately.


What I can say with sincerity is that my life has changed drastically during the years I have spent under his leadership. When I first came to the church, I was struggling with addiction, alcohol, unhealthy habits, and a lifestyle that lacked direction and discipline. At that point in my life, I was carrying unresolved personal challenges, including the difficulty of trying to understand identity, purpose, and even how to relate to God in a healthy way after growing up without a father present in my life.


What began to change for me was not simply hearing sermons, but consistently receiving practical teaching, guidance, and correction that challenged how I thought, how I made decisions, and how I viewed my future. Prophet Carn helped me understand that I did not need to live bound by past mistakes or limited by what I had previously believed about myself. Through steady teaching and personal counsel, I began to make real changes in my daily life, and over time those changes became lasting transformation.


What impacted me most was that his influence was never limited to what was preached publicly. As I served in close proximity to him, I saw that he lived the same principles privately that he taught openly. It was not simply someone delivering messages from a platform; it was someone whose daily conduct consistently reflected the same values of discipline, responsibility, faith, and service that he encouraged in others. Seeing that consistency gave me a deeper level of encouragement because it showed me that the principles he taught were not only words, but convictions he practiced every day.


He also took intentional time to provide practical guidance that directly affected the direction of my life. He offered perspectives, corrections, and life adjustments that helped me think more carefully about the kind of man I wanted to become, the kind of husband I wanted to be, and the kind of father I needed to become for my family. Even now, as I lead my wife and child, his counsel and example continue to influence how I approach responsibility, purpose, and personal growth.


Because of the changes that began during this season of my life, I no longer have any desire to return to the destructive habits that once controlled me. Today I live with far greater clarity, discipline, and purpose than I

ever believed possible years ago. One of the most meaningful moments in my life was having Prophet Carn preside over my wedding, because it represented a point in life I once did not believe I would reach.

What has also remained clear to me through the years is his consistency. I have watched him continually make himself available to people, both publicly and privately, while carrying significant responsibility of his own. His willingness to serve, mentor, and remain present for others has consistently strengthened my own conviction to strive for better in every area of my life.

He is not only an effective preacher, but in my experience, he has also been a consistent mentor and leader whose example has had a lasting and measurable impact on my life. The combination of his teaching, personal example, and willingness to invest in others has been deeply meaningful to me.

It has been both a privilege and an honor to share these personal observations, as some of the clearest examples of a person's character are often revealed in private moments that rarely become visible to others. Thank you for considering my perspective and allowing me the opportunity to share my firsthand experiences.

Respectfully,

Irve Edmond
646-245-0094

2043 Sadler Woods Lane

Charlotte, NC 28214